FILED
United States Court of Appeals
Tenth Circuit

**July 30, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

KIANTRE BELCHER,

    Petitioner - Appellant,

v.

CHRISTIE QUICK, Warden,

    Respondent - Appellee.

No. 25-5025
(D.C. No. 4:18-CV-00018-CVE-JFJ)
(N.D. Okla.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Kiantre Belcher, an Oklahoma prisoner, applies for a certificate of appealability

(COA) under 28 U.S.C. § 2253(c)(1)(A) to appeal the denial of his 28 U.S.C. § 2254

habeas corpus petition.  We deny a COA.

### I. Background

#### A.

Belcher and co-defendants Gregory Carter, Amad Gix, and Jarelle Wesson were

charged with robbing three businesses in Tulsa and a fourth in nearby Collinsville, during

an eleven-day period in July 2014.  Belcher and Carter maintained their innocence and

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

proceeded to trial. Gix and Wesson testified against them and described Belcher's participation in each of the robberies. Employees from the four businesses described how the robberies occurred and the robbers' general appearance but could not identify them.[1] Belcher's lawyer argued only Gix and Wesson's testimony connected him to the robberies, and that it was uncorroborated, biased, and untrustworthy because they were testifying to obtain shorter sentences. She also argued that although Belcher had been seriously injured in a car accident and walked with a limp, neither eyewitness testimony or surveillance video reflected any of the robbers limping or moving with difficulty.

The jury convicted Belcher of four counts of robbery with a firearm, Okla. Stat. tit. 21, § 801, and he was sentenced to four consecutive five-year prison terms.[2] He appealed, arguing that because Gix and Wesson's testimony was uncorroborated the evidence was insufficient to convict him. The Oklahoma Court of Criminal Appeals (OCCA) affirmed.

B.

Belcher then filed a pro se § 2254 habeas corpus petition in federal district court. He again challenged the sufficiency of the evidence, and also brought four additional claims challenging the constitutionality of his conviction. The district court stayed the § 2254 proceedings to allow him to exhaust those four new claims in state court. Belcher

---

[1] We refer more specifically to the evidence where relevant to our analysis but do not repeat the district court's detailed review. *See* App., vol. VII. at 19–35; *Belcher v. Quick*, No. 18-CV-0018-CVE-JFJ, 2025 WL 342198, at *2–8 (N.D. Okla. Jan. 29, 2025).

[2] The jury also convicted Carter. Wesson and Gix then pled guilty under plea agreements and received suspended prison sentences.

2

then filed an application for state post-conviction relief, which the state court denied. He

appealed that denial but the OCCA dismissed his appeal as untimely. The state courts did

not allow him to bring an appeal out of time.

Belcher returned to federal court and filed an amended § 2254 application after

obtaining counsel. He acknowledged that only his sufficiency-of-the-evidence claim was

exhausted and his four other claims were procedurally defaulted.[3] But he argued he

could overcome the procedural default via the "actual innocence gateway." *See*

*McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The district court denied Belcher's

sufficiency-of-the-evidence claim on the merits. And it concluded he had not made a

strong enough showing of innocence to overcome the procedural default of his other

claims. It denied his request for an evidentiary hearing and denied a COA. Belcher now

requests a COA from this court to appeal the district court's ruling on his actual

innocence gateway claim and its denial of his request for an evidentiary hearing.[4]

## II. COA Standard

Belcher must obtain a COA before we may review the merits of his appeal. *See*

28 U.S.C. § 2253(c)(1)(A). To do so where the district court rejected his claims on

---

[3] Belcher's other claims allege a *Brady* violation, a *Napue* violation, and constitutionally ineffective assistance of trial and appellate counsel. These claims were "procedurally defaulted" because the OCCA resolved his post-conviction appeal "based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017). Specifically, the OCCA declined jurisdiction and dismissed Belcher's appeal because it received his petition in error three days after the deadline set by that court's Rule 5.2(C)(2). We have previously held that rule to be an adequate and independent state procedural rule. *See Duvall v. Reynolds*, 139 F.3d 768, 796–97 (10th Cir. 1998).

[4] Belcher does not request a COA for his sufficiency-of-the-evidence claim.

procedural grounds, he must "sho[w], at least, that jurists of reason would find it debatable whether [his § 2254 application] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### III. Actual Innocence Gateway Standards

Under the actual innocence gateway, "[a]lso known as the miscarriage of justice exception," a habeas petitioner may "pursue a claim that would otherwise be barred on grounds other than the merits," by making "[a] proper showing of actual innocence." *Pacheco v. El Habti*, 62 F.4th 1233, 1241 (10th Cir. 2023) (internal quotation marks omitted). "The petitioner's claim of actual innocence does not serve as the basis for granting habeas relief." *Id.* (internal quotation marks omitted). "Instead, the claim of actual innocence is joined with a procedurally defaulted claim to serve as a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* (internal quotation marks omitted).

"To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Fontenot v. Crow*, 4 F.4th 982, 1031 (10th Cir. 2021) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). In this context, "evidence is new . . . so long as it was not presented at trial." *Id.* at 1032 (internal quotation marks omitted). A petitioner must show that, "in light of" such new evidence, "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Fontenot*, 4 F.4th at 1030 (internal quotation

marks omitted). "Or, 'to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Courts evaluating actual innocence gateway claims "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Fontenot*, 4 F.4th at 1031–32 (internal quotation marks omitted). Then, "[b]ased on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 329). In doing so, "the habeas court may have to make some credibility assessments." *Schlup*, 513 U.S. at 330. However, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.* This "requires a holistic judgment about all the evidence, and its likely effect on reasonable jurors applying the reasonable-doubt standard." *Id.* at 539 (citation and quotation marks omitted).

The standard for actual innocence gateway claims "is demanding," and "tenable actual-innocence gateway pleas are rare, arising only in an extraordinary case." *Fontenot*, 4 F.4th at 1031 (citation and internal quotation marks omitted). "Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy this standard." *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is

5

also satisfied that the trial was free of nonharmless constitutional error.'" *Fontenot*, 4 F.4th at 1031 (quoting *Perkins*, 569 U.S. at 401).  The required showing "is significantly higher than that needed to establish prejudice" for an ineffective assistance of counsel claim.  *Frost*, 749 F.3d at 1232 (internal quotation marks omitted).  But it is "less strict than the insufficient evidence standard," and "a petitioner need not make a case of conclusive exoneration."  *Fontenot*, 4 F.4th at 1030, 1031 (internal quotation marks omitted). Resolution of an actual innocence gateway claim is a mixed question of law and fact reviewed de novo.  *See id.* at 1034.

## IV. Discussion

### A.

Belcher does not present the kind of strongly exculpatory evidence typically required to make a credible showing of actual innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."  *Schlup*, 513 U.S. at 324.  No new forensic or physical evidence shows he was wrongly convicted. No evidence shows he was elsewhere when the robberies were committed.  No one else has confessed to the robberies, and no new evidence identifies someone else as the perpetrator.  Nor has any witness who testified against Belcher since recanted.  *See Dixon v. Williams*, 93 F.4th 394, 405 (7th Cir. 2024) (rejecting actual innocence gateway claim where petitioner "ha[d] not presented the sort of evidence that could confidently demonstrate his innocence—no exonerating DNA evidence, record of incarceration at the time of the crime, video evidence of him in a faraway location, or other evidence that could establish innocence conclusively"), *reh'g denied*, No. 21-1375, 2024 WL 1510579

6

(7th Cir. Apr. 8, 2024). Absent any similarly strong evidence of his innocence, reasonable jurists would not debate the district court's conclusion that this is not among the "rare" or "extraordinary" cases in which the actual innocence gateway standard is satisfied. *Fontenot*, 4 F.4th at 1031.

Belcher's claim instead rests on medical records and witness affidavits that he argues show he was physically unable to participate in the robberies as Gix and Wesson described. In particular, he argues this evidence shows he was unable to drive, contrary to Gix and Wesson's testimony that he did so during the robberies. He therefore argues a jury that considered the medical records and affidavits would likely find Gix and Wesson's testimony not credible. But evidence that only impeaches the credibility of incriminating witnesses is generally insufficient to support an actual innocence gateway claim. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (concluding evidence that only tended to impeach the credibility of incriminating witnesses was insufficient); *Frost*, 749 F.3d at 1232 (stating that "casting some doubt on witness credibility does not necessarily satisfy [the actual innocence gateway] standard" and denying a COA because the petitioner's new evidence "[did] not substantially undermine the victim's testimony"); *Reeves v. Fayette SCI*, 897 F.3d 154, 161 (3d Cir. 2018), *as amended* (July 25, 2018) ("Mere impeachment evidence is generally not sufficient to satisfy the actual innocence gateway standard." (internal quotation marks and brackets omitted)).

Nevertheless, the district court carefully reviewed the medical records and affidavits and found they failed to support Belcher's claim. He has not shown reasonable jurists would debate its assessment.

7

The medical records relate to Belcher's symptoms and treatments in July 2014 arising from a leg injury he suffered in a September 2013 car accident. He maintains they "substantiate . . . that he couldn't have committed the robberies because he couldn't run and he couldn't drive . . . ." Aplt. Opening Br. at 31. But while the medical records were not presented at trial, the essential facts of Belcher's claim were. The jury heard—and Belcher's lawyer emphasized—that he had been seriously injured, walked with a limp, at times used an orthopedic boot, and had a cast on his leg when he was arrested two weeks after the last robbery. Those facts did not lead the jury to disbelieve Gix and Wesson's testimony, or to have reasonable doubt about Belcher's guilt.

Although the medical records provide more details, the district court found they "provide little, if any support for [Belcher's] . . . claim and, to some extent, cut against his assertion that he was physically incapable of walking without assistance in July 2014." App., vol. VII at 65. For instance, Belcher visited an emergency room three days after the first robbery because a surgical incision had re-opened; but the medical records report he walked "without difficulty" to leave after being treated. App., vol. V at 31. Similarly, he had an outpatient procedure under general anesthesia the day of the fourth robbery and was instructed not to drive for 48 hours. But, as the district court observed, he was told he could bear weight on his leg; the robbery occurred approximately eight hours after his procedure; he did not drive; and he "primarily stood near the door for the duration." App., vol. VII at 66. Other than this 48-hour anesthesia-related driving restriction, Belcher does not cite any medical records that report he was unable to drive or was told not to drive during the relevant period. Reasonable jurists would not debate the

district court's conclusion that "[a] properly instructed jury hearing the evidence drawn from these medical records alongside the evidence presented at trial more than likely would have found that Belcher had sufficient mobility in July 2014 to participate in the four robberies in the manner described by Wesson and Gix." *Id.* at 67.[5]

As to the affidavits, Belcher primarily claims they establish he "could not drive" and "wasn't driving at all" in July 2014. Aplt. Opening Br. at 31, 40. He argues this contradicts Gix and Wesson's testimony indicating he drove to at least two of the robberies.[6] After reviewing the affidavits in detail, the district court concluded they do not adequately support Belcher's claim, for several reasons: (1) some of their information is not new; (2) a jury would likely view the affiants—Belcher's mother, friends, and the mother of his child—as biased; (3) a jury would likely give the affidavits less weight because they were offered nine years after the robberies; (4) some of the affidavits' statements contradict Belcher's own when he was arrested; and (5) many of their statements are too broad to likely give a jury reasonable doubt about Belcher's guilt.

Again, reasonable jurists would not debate the district court's assessment. None of the affiants state Belcher was somewhere else when the robberies occurred or provides similarly specific facts that could clearly show his innocence. To the extent they reiterate the facts that Belcher was injured, had trouble moving, and at times used an orthopedic

---

[5] Belcher criticizes certain statements within the district court's factual analysis. *See* Aplt. Opening Br. at 39–44. But his arguments are not supported by the record.

[6] Gix and Wesson's testimony did not clearly establish whether Belcher also drove to the third robbery and was arguably inconsistent on this point. This does not affect our resolution of Belcher's COA application.

boot or similar devices, they are at most cumulative of evidence the jury considered.  *See Taylor*, 7 F.4th at 927 (stating an actual innocence gateway claim must be based on "evidence that was not considered by the fact-finder in the original proceedings").  The affidavits do not specify just what injuries or limitations Belcher had during the relevant dates, or why his injuries made it impossible for him to drive. A reasonable jury could credit the affiants' broad statements that, to their knowledge, Belcher was *generally* not driving in July 2014, but still accept Wesson and Gix's testimony that he *did* drive, in specific cars, to specific locations, on specific nights. Reasonable jurists therefore would not debate the district court's assessment that the affidavits' broad statements about Belcher's physical limitations and inability to drive are too conclusory to likely give a jury reasonable doubt.

Belcher argues various other statements from the affidavits also tend to show he is innocent, for instance:  that his vehicle driven in the robberies was unreliable; that another witness vaguely told Belcher's mother Wesson intended to scapegoat Belcher; that Belcher did not usually associate with the other defendants or consider them friends; and that the affiants believe Belcher is a good person who could not have committed the robberies.  These statements are too attenuated from the relevant facts to cause reasonable jurists to debate the district court's ruling. *See Calderon*, 523 U.S. at 563 (stating impeachment evidence "a step removed from evidence pertaining to the crime itself" was insufficient to support an actual innocence gateway claim); *see also Taylor*, 7 F.4th at 938 ("[T]he court has a responsibility to confine the actual innocence inquiry to the relevant crimes . . . .").

10

Beyond the shortcomings in his evidence, Belcher's arguments for a COA are unpersuasive. Contrary to his contentions, the district court did not ignore or overlook any relevant facts from the medical records or affidavits. To the extent it evaluated the "likely credibility of the affiants," *Schlup*, 513 U.S. at 332, it appropriately did so when holistically assessing "what a jury would do with the new evidence," *Taylor*, 7 F.4th at 938. It is uncontroversial that juries consider a witness's relationship with the defendant. *See generally* Tenth Cir. Pattern Crim. Jury Instr. § 1.08 (advising jurors to consider whether each witness "ha[s] any relationship with either the government or the defense"). And although Belcher argues his delay in providing the affidavits was understandable, reasonable jurists would not debate the district court's probabilistic assessment that a jury would likely afford less weight to the affiants' statements about what had generally been true nine years earlier, in contrast to Gix and Wesson's contemporaneous and specific descriptions of Belcher's role in committing the robberies.

Finally, Belcher overall argues the district court erred by faulting the weaknesses in his evidence without taking an equally critical view of weaknesses in the state's evidence. His argument repeats criticisms of the trial evidence he raised when challenging the sufficiency of the evidence. The district court considered those issues in rejecting that claim, although it was subject to different legal standards. *See Schlup*, 513 U.S. at 330. Belcher no longer argues the trial evidence was insufficient to support his conviction. Reasonable jurists would not debate whether the affidavits and medical records make it "more likely than not any reasonable juror *would* have reasonable doubt.'" *House*, 547 U.S. at 538 (emphasis added).

11

At bottom, Belcher believes the district court viewed the state's evidence too favorably and his own too critically. But as emphasized above, he does not have the type of strongly exculpatory evidence required for an actual innocence gateway claim. *See Dixon*, 93 F.4th at 405. The medical records and affidavits mostly provide further detail about facts the jury considered. *See Fontenot*, 4 F.4th at 1033 (stating the "aim" of the new evidence requirement "is to lend 'credibility' to the claim of innocence by showing it is not based solely on evidence a jury has already found sufficient to convict"). At most, reasonable jurists would agree with Belcher's own statement that his evidence "would have made the jury assess the inconsistencies and weaknesses in the State's case differently." Aplt. Opening Br. at 44. But reasonable jurists would not debate whether merely pointing to weaknesses in the state's evidence or impeaching Gix and Wesson's credibility is enough to show Belcher is actually innocent. *See Pacheco*, 62 F.4th at 1241 ("[A]ctual innocence means factual innocence, not mere legal insufficiency." (internal quotation marks omitted)); *Hubbard v. Rewerts*, 98 F.4th 736, 747 (6th Cir. 2024) (stating a habeas petitioner invoking the actual innocence gateway is "require[d] . . . [to] show the probability of his *innocence*, rather than merely impeach the State's case"), *cert. denied*, 145 S. Ct. 1201 (2025); *see also Frost*, 749 F.3d at 1232 ("casting some doubt on witness credibility" did not carry petitioner's burden or entitle him to a COA).

## B.

Belcher also seeks a COA as to the denial of his request for an evidentiary hearing. He states "no controlling legal standard" governs the decision whether to hold an evidentiary hearing on an actual innocence gateway claim. Aplt. Opening Br. at 55

12

(brackets omitted) (quoting *Nicholls v. Long*, No. 20-1159, 2022 WL 211617, at *5 (10th Cir. Jan. 25, 2022) (unpublished) and *Stewart v. Cate*, 757 F.3d 929, 941 (9th Cir. 2014)).[7]  Without clearly identifying what standard he asks us to apply, Belcher argues the district court abused its discretion.

We treat abuse of discretion as the applicable standard.  *See Stewart*, 757 F.3d at 942 (reviewing the decision not to hold an evidentiary hearing for abuse of discretion). But we are not persuaded by Belcher's arguments.  He does not cite any case that has held an evidentiary hearing was required on similar facts.[8]  And we disagree with his contention that the district court itself found Gix and Wesson more credible than the five affiants; rather, it appropriately evaluated "how . . . the likely credibility of the affiants bear[s] on the probable reliability" of the evidence.  *Schlup*, 513 U.S. at 332.[9]

---

[7] Unlike the decision whether to conduct a hearing on the merits of a habeas claim, § 2254(e)(2) does not apply to the district court's decision whether to hold a hearing on an actual innocence gateway claim.  *See Teleguz v. Pearson,* 689 F.3d 322, 331 n.6 (4th Cir. 2012) ("[C]ircuits considering whether the limitation on evidentiary hearings in § 2254(e)(2) applies to *Schlup* claims have overwhelmingly found that it does not." (collecting cases)).  Belcher's argument that he exercised sufficient "due diligence" to satisfy § 2254(e)(2)(A)(ii) is therefore not directly relevant to our review here.

[8] Belcher relies on *Stewart*, in which the Ninth Circuit held a hearing was not necessary.  *See* 757 F.3d at 942.  It did so in part because the district court had "assumed [the] newly presented evidence was credible," but found it still insufficient to support the petitioner's claim.  *Id.*  Similarly here, the district court found that even "disregarding potential bias and the timing of the affidavits," their statements "either contradict Belcher's own . . . or lack sufficient specificity" to carry his burden.  App., vol. VII at 69. Even disregarding any potential bias, the affidavits' statements about Belcher's physical limitations and driving are too general to cause reasonable jurists to debate the district court's ruling.

[9] Belcher argues that in addition to assessing credibility a hearing would allow him to explain the medical records.  But he did not suggest this when he requested a hearing in district court, so it does not point to an abuse of discretion.  *See United States v.*

Reasonable jurists would not debate whether the district court abused its discretion by denying Belcher's request for an evidentiary hearing. *See Buck v. Davis*, 580 U.S. 100, 123 (2017) (accepting a formulation of the COA standard as "whether a reasonable jurist could conclude that the District Court abused its discretion" where the underlying ruling would be reviewed for abuse of discretion).

### V. Conclusion

We deny Belcher's application for a COA and dismiss this matter.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

*Herrera*, 51 F.4th 1226, 1277 (10th Cir. 2022) ("[W]e evaluate the district court's exercise of discretion based on the information presented at the time of the ruling.").